IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARK KIRCHOFF | * |
| v. | * Civil Action WMN-10-1532 |
| JUSTIN ABBEY, ET AL. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Pending before this Court are two motions, a Motion for Summary Judgment filed by Defendants Thomas Butz and Windridge Farms, LLC., ECF No. 41, and a Motion to Dismiss or in the Alternative, for Summary Judgment, filed by Defendants Deborah Cook, Kenneth Cook and James Riley Cook, ECF No. 43. The parties have fully briefed the motions, which are now ripe for review. Upon consideration of the pleadings, facts and applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and, for the reasons set forth below, Defendants Thomas Butz and Windridge Farms, LLC.'s Motion for Summary Judgment will be granted, and summary judgment will be granted for Defendants Deborah Cook, Kenneth Cook and James Riley Cook.

**I. BACKGROUND**

This case involves claims of negligence and premises liability against the social hosts of a party and the property owners of the land on which the party was held. The facts

viewed in the light most favorable to the plaintiff are as follows. On the evening of April 18, 2009, Plaintiff Mark Kirchoff attended a "farm party" held on the property at 2722 Buckeystown Pike, Adamstown, MD ("Property"). The party was hosted by Defendant James Riley Cook ("Riley Cook"), son of Defendants Deborah and Kenneth Cook (collectively, "Cook Defendants" or "Cooks"). The Property is owned by Defendants Windridge Farms, LLC. and Theodore Butz[1] (collectively, "Windridge"). At the time of the party, the Cooks were leasing from Windridge a home and some surrounding land located on the Property.

Kirchoff learned about the party from some of his friends and decided to attend even though he did not know the host, Riley Cook. The party was held on a concrete slab on part of the Property. There was a bonfire on the slab and tables set up to play "beer pong."[2] When Kirchoff arrived there were

---

[1] Theodore Butz is an owner by virtue of being a member of Windridge Farms, LLC.

[2] Beer pong is a game that encourages players to drink heavily. Opposing players stand at opposite ends of a table behind a grid of beer-filled cups. Players from one team throw or bounce a ping-pong ball from their end of the table and try to land it in one of the cups arranged at the other end of the table. If the ball lands in a cup, then a player on the opposing team has to remove that cup from the table and drink its contents. The rules may vary by location, "but the common object is the copious consumption of alcoholic beverages." Venito v. Salverson, No. 08-104110 (N.Y. Sup. Ct. June 21, 2011).

2

approximately 50 guests in attendance, some of whom were under the age of 21. Many of the guests were drinking alcohol.

Kirchoff first tried to play beer pong, but the tables were occupied, and there was a list of people waiting to play. Then he sat down by the fire to talk to one of the friends with whom he had come to the party. While sitting there, he noticed a man he did not know yelling at him from across the fire. This person turned out to be Defendant Justin Abbey. Abbey approached Kirchoff in a threatening manner and "invaded Kirchoff's personal space." Kirchoff stood up and Abbey shoved him. Kirchoff then punched Abbey in the face, knocking him down. Once Abbey was on the ground Kirchoff did not feel threatened any longer, but decided he had better leave because Abbey's friends began to rush at him. Kirchoff tried to flee and backpedaled away from the scrum and towards his friend's car, but Abbey and his friends pursued him. When Kirchoff was almost to his friend's car, Abbey struck him on the side of the head with an empty vodka bottle and Kirchoff fell to the ground. Abbey and his friends struck Kirchoff while he was on the ground until Kirchoff's friends pulled him into the car and drove away. As a result of being struck with the bottle, Kirchoff suffered a brain hemorrhage. He continues to suffer permanent effects from his injury, including pain, seizures, and black-outs.

Kirchoff has named Thomas Butz and Windridge Farms, LLC. as defendants because they are the owners of the property where the party took place, and has named the Cooks as defendants because they were the hosts of the party.  He has alleged counts of premises liability and negligence against all of these defendants.  Discovery is now complete.  Windridge has moved for summary judgment as to both counts plead against it on the grounds that it did not owe any duty to Plaintiff Kirchoff and that he is barred from recovery by contributory negligence.  The Cook Defendants have moved to dismiss the claims against them because there is no cause of action in Maryland for social host liability, or, in the alternative, for summary judgment because they did not violate any duty to Plaintiff as a social guest and because he is barred from recovery by contributory negligence.[3]

## II. LEGAL STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A

---

[3] As the Court is granting summary judgment for both Windridge and the Cook Defendants based on an analysis of the parties' respective duties, it does not need to reach the issue of contributory negligence.

4

party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. Unsupported speculation is insufficient to defeat a motion for summary judgment. Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)).

## III. DISCUSSION

To sustain a cause of action for negligence, a party must provide evidence that (1) the defendant was under a duty to protect the plaintiff from injury, (2) the defendant breached that duty, (3) the plaintiff suffered an actual injury, and (4) the injury proximately resulted from defendant's breach of that

5

duty. Rosenblatt v. Exxon, 642 A.2d 180, 1990 (Md. 1994). While the existence of a legal duty is a question of law to be decided by the Court, Muthukumarana v. Montgomery Cty., 805 A.2d 372, 386-387 (Md. 2002), "[w]hen [its] existence. . . depends on a determination of a dispute of material fact, the facts should first be determined by the fact finder." Corinaldi v. Columbia Courtyard, Inc., 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005). In the context of a summary judgment motion, the Court will resolve any such underlying questions of disputed material fact in favor of the nonmoving party. Id.

### A. **Duty of Windridge**

Kirchoff seeks to hold Windridge liable as the owner of the land to which he was invited as a guest. Generally, a property owner has a duty to exercise reasonable care to keep its premises safe for its tenants and its tenant's family, guests and invitees. Matthews v. Amberwood Assocs. Ltd. P'ship, Inc., 719 A.2d 119, 123 (Md. 1998); see also Shields v. Wagman, 714 A.2d 881, 884 (Md. 1998) (quoting Bramble v. Thompson, 287 A.2d 265, 267 (Md. 1972)) ("'the owner must use reasonable and ordinary care to keep his premises safe for the invitee.'") What is reasonable will depend on the facts and circumstances of the particular situation. Scott v. Watson, 359 A.2d 548, 554 (Md. 1976). Maryland courts have continued to abide by the policy that a landlord is not an insurer of its tenant's safety,

and so have refused to impose a heightened "special duty" on landlords that would require them to protect tenants and their invitees from criminal acts by third parties. Id. at 552; Rhaney v. Univ. of Md. E. Shore, 880 A.2d 357, 365-366 (Md. 2005). The courts instead confine the duty of a landlord to that of exercising reasonable care to protect against known or reasonably foreseeable risks. Scott, 359 A.2d at 553-554. Therefore, assuming Windridge exercised control over the part of the Property where the party took place,[4] its duty is limited to protecting only against those risks that are known or reasonably foreseeable.

To determine the scope of this duty, it is essential to determine what Windridge knew or should have known about the circumstances of its property. Butz, a member of Windridge, testified in his deposition that once, in 2008, his employees

---

[4] The parties dispute whether or not the farm party took place in an area of the Property over which Windridge continued to exercise control after entering into the lease with the Cooks. Windridge stated that it "did not retain control over any areas of the leased property, with the exception of the barns housing farm equipment." Windridge Mot. at 5; see also Butz Dep. at 34 (stating that the Cooks "essentially . . . have run of the entire farm," excepting the aforementioned buildings). Plaintiff suggests that the party took place in an area very near these buildings, and that the area was used and controlled by Windridge. Opp'n to Windridge at 11; see also R. Cook Dep. at 21, 28 (noting that parties generally occurred in a "parking lot" and describing the location of the bonfire as on the side of the barn away from the leased house). For purposes of summary judgment, the Court will assume that the April 18, 2009, party took place on an area of the Property over which Windridge exercised control.

found empty beer bottles and cans inside an abandoned tenant house on the property. Butz Dep. at 16-17. He assumed someone had held a Halloween party in the abandoned house.[5] Id. On one later occasion Butz himself found fewer than 50 burned, empty beer cans on the concrete slab behind the barn in what looked like the remains of a bonfire. Id. at 37-38. He did not recall finding empty beer cans or bottles on any other occasions, id., though his employee Jacob Smith mentioned in his deposition that it was "nothing out of the ordinary" to see beer bottles around the farm. J. Smith Dep. at 12. Moreover, Riley Cook testified that after each and every party he would clean up the empty cans and bottles by collecting them in trash bags and throwing the bags in a dumpster maintained by his parents. R. Cook Dep. at 23-24, 26-27. The only testimony about an excessive number of empty cans laying around on the property is offered by Kirchoff, who, while at the party, noticed a "mountain of empty cans and. . . empty 30-packs" located near the party area, though he admitted that did not know how long they had been there. Kirchoff Dep. at 118-119.

No reasonable jury could find that, based on this evidence, Windridge knew about, or should have known about, the underage parties held by Riley Cook. Finding empty cans and bottles on

---

[5] Subsequently, Butz had the house boarded up to keep trespassers out because the structure was unsafe. Butz Dep. at 17.

one's farm property does not reasonably lead to the conclusion that an underage tenant is holding large drinking parties; all it means is that someone was drinking on the premises and declined to use a trashcan. The bottles and cans could be there from Riley's parents or their guests; from Riley's uncle or his adult son, both of whom lived with the Cooks, D. Cook Dep. at 9; or from others who accessed the property. Neither Butz nor his employees ever saw evidence of beer pong games, which could have pointed to underage drinking. See Butz Dep. at 36; J. Smith Dep. at 15-16. Furthermore, though Kirchoff noticed a large number of empty cans present on the property during the party, he could provide no testimony that the cans were there prior to the party or after it concluded. Moreover, Riley testified that he cleaned up after every party, so even though Windridge employees were frequently on the property it is reasonable that there would not have been evidence of large parties for them to discover.

Additionally, the fact that Butz surmised that a Halloween party had once taken place in the abandoned tenant house does not indicate knowledge of frequent underage drinking parties. Again, there is no reason for Butz to believe that it was an underage party, nor was there any reason to believe that this was one of many parties being held on the property. In fact, Windridge acted responsibly and consistent with its duty as

9

landlord when, after finding evidence of a party, it boarded up the dangerous, abandoned house.  There was no reason for Windridge to believe that more parties would take place after the house was boarded up, or to believe that parties would be moved to the concrete slab.

As no reasonable jury could find that Windridge had actual or constructive notice of the underage drinking parties, Windridge could not have foreseen the harm that would result from allowing such parties to continue occurring and so had no duty to shut them down.  Absent a duty, Windridge cannot be liable for negligence; therefore summary judgment will be granted in favor of Windridge.

**B. Duty of the Cooks**

The extent of the duty that the Cooks owe to Kirchoff is determined by Kirchoff's status while on the property.  See Balt. Gas and Elec. v. Flippo, 705 A.2d 1144, 1148 (Md. 1998). Kirchoff was invited to the party by Arlette Blanco, a friend of Riley Cook, and so was a social guest.  Kirchoff Dep. at 93-94. In Maryland, a social guest is the equivalent of a "licensee by invitation."  Bramble v. Thompson, 287 A.2d 265, 267 (Md. 1972). The host owes the licensee by invitation a duty "to exercise reasonable care to make the premises safe for his guest or he must warn him of known dangerous conditions that cannot reasonably be discovered and which in fact are not discovered by

10

the guest." Id.; see also Flippo, 705 A.3d at 1148; Laser v. Wilson, 473 A.2d 523, 526 (Md. Ct. Spec. App. 1987). As such, the only circumstances under which a host will be held liable for physical injury suffered by a guest and caused by a condition on the premises are

> if, but only if, (1) the host knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such guests, and should expect that they will not discover or realize the danger, and (2) the host fails to exercise reasonable care to make the condition safe, or to warn the guests of the condition and the risk involved, and (3) the guests do not know or have reason to know of the condition and the risk involved.

Paquin v. McGinnis, 229 A.2d 86, 88 (Md. 1967); see also Laser, 473 A.2d at 526-527.

Kirchoff's allegations suggest the presence of two dangerous conditions: an unsupervised drinking party and Justin Abbey's attendance at that party. Assuming that an unsupervised underage drinking party is in and of itself a dangerous condition, it is not a condition for which the Cooks can be held liable because it is not undiscoverable by Kirchoff. Kirchoff knew that there would be drinking and underage guests in attendance when he was invited to attend the party, Kirchoff Dep. at 112-113, and would quickly realize upon arrival that there was no "supervision," i.e. attendance by parents. Kirchoff, as a 21 year old man and peer of the partygoers, would reasonably be able to recognize the inherent risks associated

11

with these conditions, such as the fact that excessive alcohol consumption lowers inhibitions and may increase aggression.[6]

Moreover, the fact that prior parties erupted into fights does not create a duty. There is no evidence that these fights had been escalating in violence or that there was some kind of ongoing feud that made parties hosted by Riley Cook any more dangerous than unsupervised drinking parties hosted by anyone else.[7] As such, there is no duty imposed on the Cooks to warn party attendants of the possibility of violence as it is a risk reasonably ascertainable by anyone in attendance at this type of party.

Based on the foregoing, it is clear that the possibility that any partygoer could turn violent once he or she is intoxicated is a risk foreseeable to and discoverable by

---

[6] The Supreme Court recognized this fact in Begay v. United States, 553 U.S. 137, 161 (2008). ("Alcohol use often precedes violent crimes, see, e.g., Roizen, Epidemiological Issues in Alcohol-Related Violence, in 13 Recent Developments in Alcoholism 7, 8-9 (M. Galanter ed. 1997)")

[7] The Court notes that the only deponent who mentioned there being fights at earlier parties hosted by Riley Cook was Justin Abbey, and that Abbey described the fights by using the words "trouble" and "scuffle," and did not seem to take much notice of who was involved, suggesting that the fights were not very severe or notable. See Abbey Dep. at 29, 91-92. Though he said that the fights often ended the party, in his next breath he said, "[e]verybody would just leave. I mean, it gets late. I left sometimes because I didn't want to be there anymore." Abbey Dep. at 92. The excerpts from the depositions of Riley Cook and Arlette Blanco do not contain any mention of fighting at prior parties.

Kirchoff when attending an unsupervised drinking party. Kirchoff suggests, however, that Abbey's presence constituted a "dangerous condition" that is separate from the party itself and of which he should have been warned.

This is similar to the allegation made by the plaintiff in Rhaney v. University of Maryland Eastern Shore, 880 A.2d 357 (Md. 2005). In Rhaney, plaintiff Rhaney was assaulted by his roommate, Clark, in their dormitory room and suffered a broken jaw. Rhaney sued the University alleging that the University knew about Clark's dangerous propensity when it assigned him to be Rhaney's roommate and negligently failed to warn Rhaney about the danger posed by Clark. His theory was based on characterizing Clark's propensity as a dangerous or defective condition and so analogizing it with the dangerous condition of improperly maintained security lighting in a case in which a tenant was murdered by an intruder. Id. at 365 (analogizing with Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship, 826 A.2d 443 (Md. 2003)). The Court reviewed Hemmings and its lineage and drew a distinction between the physical conditions that contribute to or facilitate the commission of tortious acts, and the tortious acts and torfeasors themselves. Id. at 365-366. In doing so it relied largely on the general rule that "there is no duty to control the tortious acts of a third person." Id. The Court also suggested in a footnote that to conclude Clark

amounted to a "dangerous condition" would lead to the extreme result of creating a "floating duty, anchored only by Clark's presence," so that the University had a duty to any potential plaintiff who was confronted with Clark on University-controlled premises.  Id. at FN9.

Finding that Abbey is a "dangerous condition" would lead to a similarly unreasonable situation.  In effect, it would mean Abbey was a moving dangerous condition and that, any time he attended a party, any host who knew about Abbey's reputation for violence would be obligated to warn all first-time party attenders about the danger posed by Abbey.  This would make the host responsible for Abbey and create an obligation to control his conduct, contrary to the general rule stated in Rhaney.  880 A.2d at 365-366; see also Corinaldi, 873 A.2d at 490 (stating that there is no support for the contention that the property owner has a duty to control the conduct of a third party) (citing Restatement (Second) of Torts § 315).  Furthermore, the duty owed by the Cooks to Kirchoff, a social guest, is lesser than the duty the University owed to Rhaney, a tenant/invitee.  Because the Maryland Court of Appeals refused to hold that Clark was a "dangerous condition" even though he occupied the same space as his roommate on a daily basis, it would be inconsistent for this Court to hold that Abbey, who was only occasionally and

unpredictably present at farm parties, was a "dangerous condition."

Notwithstanding, even if this Court decided that Abbey's presence constituted a "dangerous condition," there is insufficient evidence to demonstrate the Cooks' knowledge of this condition. Assuming all three Cooks knew that the underage drinking parties were taking place,[8] there is little evidence to suggest that they knew Abbey was an extremely violent person whose presence heightened the risk already associated with the underage drinking parties. Riley Cook stated in his deposition that Abbey had a reputation for running with a rowdy group of friends who were known to "get drunk and fight kids." R. Cook Dep. at 49. Riley himself, however, never saw Abbey get into any fights or knew anyone he had fought, R. Cook Dep. at 50-51, and Abbey testified that he had not gotten in fights at any of Riley's previous parties, J. Abbey Dep. at 92. As the Rhaney Court declined to hold that the University should have known that Clark was a "dangerous condition" even though it had previously suspended Clark for his participation in an "ongoing altercation" that began at an on-campus party and continued into the dining hall the next day, Rhaney, 880 A.2d at 366, it would

---

[8] The only evidence presented about Kenneth Cook, Riley's father, is Riley's testimony that his father did not know about the parties, never came near the parties, and slept in a room on the far side of the house out of view of the party location. R. Cook Dep. at 27-28, 30-31.

15

be inconsistent for this Court to hold that the Cooks should have known that Abbey posed a serious threat based merely on rumored conduct at unknown past parties.

Because Kirchoff was a social guest who could discover the risks posed by the underage drinking party and because Abbey did not create a separate dangerous condition, nor did the Cooks have sufficient knowledge of prior altercations so that they should have been on notice of Abbey's purported dangerous condition, the Cooks did not have a duty to warn Kirchoff of the risks he faced by attending the party and being in the presence of Justin Abbey. Absent a duty, the Cooks cannot be liable for negligence; therefore the Court must grant summary judgment in favor of the Cook Defendants.[9]

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the Motion for Summary Judgment filed by Defendants Thomas Butz and Windridge Farms, LLC., ECF No. 41, will be granted and the

---

[9] The Court notes that the Cooks also argue that the claims against them should be dismissed because Maryland does not recognize a cause of action for social host liability. Social host liability is imposed when "a party . . . is injured as a direct or indirect result of the host's having served alcohol to the tort feasor." Hebb v. Walker, 536 A.2d 113, 116 (Md. Ct. Spec. App. 1988). The Court agrees that there is currently no cause of action for social host liability in Maryland. See id.; see also Wright v. Sue & Charles, Inc., 749 A.2d 241, 247 (Md. Ct. Spec. App. 2000). While the Court did not discern in Kirchoff's opposition a claim alleging social host liability, insofar as such a claim is advanced, it shall be dismissed.

Motion to Dismiss or in the Alternative, for Summary Judgment, filed by Defendants Deborah Cook, Kenneth Cook and James Riley Cook, ECF No. 43, will be granted.  The Court will issue a separate Order.

_____/s/_____  
William M. Nickerson  
Senior United States District Judge

October 5, 2011